**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

**\*\*\***

| | |
|---|---|
| THE MONTE H. GREENAWALT REVOCABLE TRUST, *et al.*, | 2:12–cv–01983–LRH–VCF |
| Plaintiffs, | |
| vs. | **ORDER** |
| W. KENDALL BROWN, *et al.*, | |
| Defendants. | |

This matter involves a breach of contract claim and action for accounting against W. Kendall Brown, the former trustee of the Monte H. Greenawalt Trust (a/k/a the "Irrevocable Trust"). Before the court are Defendant W. Kendall Brown's motions for protective orders (#37, #41[1]). Plaintiffs filed oppositions (#42, #45); and, Brown replied (#46). For the reasons discussed below, Brown's motions are granted.

**BACKGROUND**

From 1970 through 2007, Brown served as general counsel to Monte H. Greenawalt. Greenawalt acquired his wealth from Foot Levelers, Inc. Later in life, Greenawalt partially sold and gifted Foot Levelers to his son, Kent Greenawalt through a trust (*i.e.*, "the Nevada Trust" a/k/a "the Revocable Trust"). After creating the Revocable Trust, Monte retained 40% ownership of Foot Levelers.

On March 17, 2005, Monte formed a second trust, the Monte Greenawalt Trust (*i.e.*, "the Irrevocable Trust" a/k/a "the Iowa Trust"). Brown was named as the trustee, and Kent was named as the

---

[1] Parenthetical citations refer to the court's docket.

1

beneficiary. As part of settling the Irrevocable Trust, Monte (1) gifted shares of Foot Levelers from the Revocable trust the Irrevocable trust and (2) sold the remaining shares from the Revocable trust the Irrevocable trust for $10,185,997.12. The sale was memorialized by a promissory note, which required the sale to be complete by January 29, 2007.

Sometime in 2006 or 2007, at the age of eighty-three, Monte married Plaintiff Ruth Hilton Greenawalt. Additionally, sometime in 2007, the promissory note was allegedly satisfied in full.

On December 26, 2007, Monte died. Following Monte's death, two institutions took Monte's place as the trustee of the Revocable Trust.

On February 6, 2012, Ruth became the trustee of the Revocable Trust. As trustee, Ruth and her CPA reviewed three bankers boxes of statements from four sources: the Revocable Trust, the Irrevocable Trust, the Bessemer Trust, and the Monte H. Greenawalt Foundation, which is a charitable organization.

On November 15, 2012, Ruth filed this action against Brown alleging that the $10,185,997.12 owed under the March 17, 2005 promissory note was unaccounted for. As stated in the complaint, the only issue raised by Ruth's complaint is whether the Revocable Trust was actually paid $10,185,997.12, as required by the promissory note. (*See* Second Amend. Compl. (#30) at ¶¶ 14–15, 20–21) (alleging a breach of contract claim and demand for accounting because "Brown breached the contract by failing to pay the full amount of the Promissory Note plus interest to the Trust.").

On November 5, 2013, Brown filed the instant motions for protective orders. Brown argues that Ruth is using this action to engage in a fishing expedition and obtain information regarding, *inter alia*, (1) non-party accounts and trust that are irrelevant to the claims asserted against Brown and (2) the source of the funds used to pay the note.

2

**DISCUSSION**

Brown's motions for protective orders present three questions: (1) whether this court may quash, or issue a protective order regarding, Plaintiffs' third-party subpoenas; (2) whether Plaintiffs' discovery requests, including information sought by the subpoenas, seek relevant information; (3) and, whether Plaintiffs' discovery requests seek privileged information. Each question is discussed below.

## I. Whether this Court may Quash or Issue a Protective Order regarding Plaintiffs' Subpoenas

The first question the court must resolve is whether this court may quash, or issue a protective order regarding, Plaintiffs' nonparty subpoenas. As discussed above, Plaintiff issued at least three subpoenas on nonparties from the U.S. District Court for the District of Columbia. Plaintiffs argue that this court cannot quash or issue a protective order governing Plaintiffs' subpoenas because only "the **issuing** court" may. (*See* Pl.'s Opp'n (#42) at 2:4) (emphasis original).

Federal Rule of Civil Procedure 45 governs subpoenas. Before December 1, 2013, motions to quash or modify subpoenas were governed by Rule 45(c)(3)(A), which stated that "the issuing court must quash or modify" the subpoena. As of December 1, 2013, motions to quash or modify subpoenas are governed by Rule 45(d)(3)(A), which states that "the court for the district where compliance is required must quash or modify" the subpoena. The Advisory Committee Notes discussing this revision explain that this subsection was "revised to recognize the court where the action is pending as the issuing court." FED. R. CIV. P. 45, Advisory Committee Notes, 2013 Amendment.

Plaintiffs' argument fails for three reasons. First, under both versions of Rule 45, a party may move to quash a subpoena—(or as discussed below, move for a protective order regarding a subpoena)—that subjects any person "to undue burden." *Compare* FED. R. CIV. P. 45(C)(3)(A)(iii) ("Old Rule 45") (stating, in part, that "the issuing court must quash or modify a subpoena that . . . subjects a

person to undue burden.") *with* FED. R. CIV. P. 45(d)(3)(A)(iii) ("New Rule 45") (stating, in part, that "the court for the district where compliance is required must quash or modify a subpoena that . . . subjects a person to undue burden."). As discussed in more detail below, (*see infra* § II), Plaintiffs' subpoenas subject persons "to undue burden" as a matter of law because the subpoenas seek irrelevant information.

Second, assuming new Rule 45 applies, this court may quash Plaintiffs' subpoenas because this court is "the court where the action is pending." *See* FED. R. CIV. P. 45, Advisory Committee Notes, 2013 Amendment.

Third, assuming old Rule 45 applies, this court may still resolve Brown's motion because Brown filed a motion for a protective order under Rule 26(c), not a motion to quash under Rule 45. This was the proper procedure under old Rule 45. *See Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 636 (C.D. Cal. 2005) ("[A] party cannot object to a subpoena *duces tecum* served on a nonparty, but must instead file a motion to quash or seek a protective order."); s*ee also Auto-Owners Ins. Co. v. Se. Floating Docks, Inc*., 231 F.R.D. 426, 429 (M.D. Fla. 2005) (holding that a party may bring a motion for protective order under Rule 26(c) regarding subpoenas served on non-parties, where the party's legitimate interests are affected); *Washington v. Thurgood Marshall Acad*., 230 F.R.D. 18, 22 (D. D.C. 2005).

The court, therefore, concludes that it may issue a protective order regarding Plaintiffs' subpoenas.

## II.    <u>Whether Plaintiffs' Discovery Requests Are Relevant</u>

Having determined that this court may resolve the entirety of Brown's motions, the court turns to the second question that Brown's motions raise; namely, whether Plaintiffs' discovery requests are relevant.

### A.    *Legal Standard*

Federal Rule of Civil Procedure 26(b)(1) articulates the appropriate scope of discovery. Rule 26 permits liberal discovery of information that is "relevant to any party's claim or defense." *See* FED. R. CIV. P. 26(b)(1); *Seattle Times, Co. v. Rhinehart*, 467 U.S. 20, 34 (1984). Discovery requests are relevant "if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." FED. R. CIV. P. 26(b)(1).

Discovery, however, has limits. The Advisory Committee Notes to the 2000 Amendments to Rule 26(b)(1) explain, "the parties have no entitlement to discovery to develop new claims or defenses that are not already identified in the pleadings." This prevents litigants from engaging in "fishing expeditions" that may expose the defendant to claims not previously asserted in the plaintiff's complaint. *See Hickman v. Taylor*, 329 U.S. 495, 508 n. 8 (1947).

Where, as here, a party requests information that is not reasonably calculated to lead to the discovery of admissible evidence, the party opposing disclosure may move for a protective order under Rule 26(c). In pertinent part, Rule 26(c) empowers the court, "for good cause, [to] issue an order to protect a party or person from annoyance, embarrassment, oppression or undue burden or expense, including . . . [f]orbidding the disclosure of discovery. FED. R. CIV. P. 26(c)(1)(A).

The party resisting discovery bears the burden of persuasion. *U.S. Equal Emp't Opportunity Comm'n v. Caesars Entm't, Inc*., 237 F.R.D. 428, 432 (D. Nev. 2006) (citing *Cipollone v. Liggett Group, Inc*., 785 F.2d 1108, 1121 (3rd Cir. 1986)). If the discovery sought is not relevant, the court should restrict discovery by issuing a protective order. *Roehrs v. Minnesota Life Ins*. Co., 228 F.R.D. 642, 644 (D. Ariz. 2005) (citing *Herbert v. Lando*, 441 U.S. 153, 177 (1979)). Discovery requests seeking irrelevant information are inherently undue and burdensome. *Jimenez v. City of* Chicago, 733 F.

5

Supp. 2d 1268, 1273 (W.D. Wash. 2010) (citing *Compaq Computer Corp. v. Packard Bell Elecs.*, 163 F.R.D. 329, 335–336 (N.D. Cal. 1995)).

The law confers "broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." *Phillips v. Gen. Motors Corp.*, 307 F.3d 1206, 1211 (9th Cir. 2002) (citing *Seattle Times Co.*, 467 U.S. at 38 (1984)).

### B.    *Plaintiffs' Discovery Requests Seek Irrelevant Information*

Brown objects to Plaintiffs' discovery requests because they seek irrelevant information. For purposes of clarity, the court simplifies Brown's arguments as objecting to Plaintiffs' various discovery requests as irrelevant because they seek information: (1) belonging to third-party funds, accounts, and trusts that were not parties to the promissory note or litigation; and, (2) regarding the source of the funds used to repay the promissory note. For the reasons discussed below, the court agrees.

As discussed above, Plaintiffs' complaint states causes of action for breach of contract and a demand for an accounting on the grounds that the Irrevocable Trust did not repay the Revocable Trust under the terms of the promissory note. (*See* Second Amend. Compl. (#30) at ¶¶ 14–15, 20–21) (alleging a breach of contract claim and demand for accounting because "Brown breached the contract by failing to pay the full amount of the Promissory Note plus interest to the Trust."). Accordingly, this action presents, at most, two questions: did the Irrevocable Trust, in fact, repay the Revocable Trust under the terms of the promissory note? And, if not, how much is still owed under the terms of the note?

In order to answer these questions, Plaintiffs' seek information (1) belonging to third parties that were not parties to the note (*e.g.*, the Bessemer Trust, the Greenawalt Foundation) and (2) regarding the sources of Defendants' funds that were used to repay on the promissory note. These inquiries are irrelevant to the claims identified in Plaintiffs' complaint.

Assuming, *arguendo*, that Plaintiffs obtained all possible information regarding the third-party trusts and accounts, and the various sources of the funds that were used to repay the promissory note, Plaintiffs would not be one step closer to determining whether Defendants (1) breached their contract with Plaintiffs or (2) owe Plaintiffs additional monies under the terms of the promissory note.

Plaintiffs present two arguments in opposition. First, Plaintiffs argue that Monte Greenawalt and Kent Greenawalt unlawfully withdrew funds to repay the note from accounts that "should have been left to" Monte and his spouse, Ruth Greenawalt. (Pl.'s Opp'n (#42) at 6:9–19). Even if this were true, this has no bearing on Plaintiffs' claims for breach of contract or accounting against Brown and the Trust. On the contrary, this allegation of wrongful conduct is against Monte Greenawalt and Kent Greenawalt who are not parties to this action.

Second, Plaintiffs argue that information from third parties, like the Greenawalt Foundation, is relevant because "Plaintiffs have reason to believe" that the Greenawalt Foundation withdrew money from the Revocable Trust after Defendants repaid the Trust. Even if this were true, this has no bearing on Plaintiffs' claims for breach of contract or accounting against Brown and the Trust. (*See* Second Amend. Compl. (#30) at 3:14) (alleging that Defendants' breached their contract "by failing to pay the full amount of the Promissory Note plus interest to the trust."). Plaintiffs' suspicion that the money paid into the trust did not stay there does not entitle Plaintiffs' to an unfettered examination of the financial records of third parties.

## III.   Whether Plaintiffs' Discovery Requests Seek Privileged Information

The final question the court must resolve is whether Plaintiffs' discovery requests seek information covered by the attorney-client privilege. The court finds that they do. At least nine of Plaintiffs' interrogatories request information concerning "meetings and/or telephonic discussions" between Monte and Brown, "any and all documents [Brown] prepared relating to . . . [Monte's] durable

power of attorney," and "the reasons [Brown], as Monte H. Greenawalt's attorney, refused to prepare legal documents necessary to change Monte H. Greenawalt's will." (*See* Pl.'s Mot. for Prot. Order (#37) at 12) (listing interrogatories).

Plaintiffs' opposition does not assert that Plaintiffs' these request seek "nonprivileged" information, as permitted by Rule 26. Rather, Plaintiffs' opposition merely asks that Defendants produce a privilege log. Accordingly, the court construes Plaintiffs' opposition as consenting to Defendants' motion for a protective order insofar as Plaintiffs failed to file points and authorities demonstrating that Plaintiffs' may here discovery privileged information. *See* Local Rule 7-2(d).

ACCORDINGLY, and for good cause shown,

IT IS ORDERED that Defendant W. Kendall Brown's motions for protective orders (#37, #41) are GRANTED.

IT IS FURTHER ORDERED that Third Parties are PROTECTED from disclosing information to Plaintiffs pursuant to Plaintiffs' third-party subpoenas.

IT IS FURTHER ORDERED that Defendants are PROTECTED from disclosing information regarding the source of funds that were used to repay the promissory note.

IT IS FURTHER ORDERED that Defendants MAY conduct discovery to determine the value of the securities that were used to repay the promissory note.

IT IS SO ORDERED.

DATED this 18th day of December, 2013.


_____
CAM FERENBACH
UNITED STATES MAGISTRATE JUDGE

8